Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4990 | **DATE** | June 10, 2003 |
| **CASE TITLE** | *United States v. Perry and Gwendolyn Williams* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Government's Motion for Judgment on the Pleadings

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, the Government's motion for judgment on the pleadings [10-1] is GRANTED. Judgment is hereby entered in favor of the Government, and against Defendants, jointly and severally, in the amount of $70,661.00. The Clerk is directed to enter a Rule 58 Judgment.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 02 C 4990 |
| | ) | |
| PERRY and GWENDOLYN WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

**JUN 1 2 2003**

## MEMORANDUM OPINION AND ORDER

Plaintiff United States brings this civil action against Defendants Perry and Gwendolyn Williams alleging that they submitted false income statements in support of their son's federal educational grant applications in violation of the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (the "FCA"). Presently before the Court is the Government's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] Defendants, in their Answer, have admitted all allegations relating to liability. However, in response to the Government's motion, Defendants raise several Constitutional challenges, both facial and "as applied," to the FCA's damages provisions. For the following reasons, the Government's motion is granted.

I.  **Background**[2]

---

[1] In addition to its FCA claim, the Government alleges pendent state law unjust enrichment and "payment by mistake" claims. The present motion, however, is brought only on the FCA claim. Because the Government has prevailed on its FCA claim, any recovery on the state law claims would be precluded as duplicative. *See EEOC v. Waffle House*, 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can and should preclude double recovery . . .") (internal quotations and citation omitted). Therefore, the Government's two state law claims are dismissed.

[2] The following facts are drawn from the Government's Complaint.

The Pell Grant program, administered by the United States Department of Education, provides financial assistance to eligible students to help defray the costs of post-secondary education. To qualify for a Pell Grant, a student must meet financial eligibility requirements. The student's post-secondary institution determines eligibility based on the student's financial need, which, of course, involves an evaluation of income. If the student is a dependent, the parents' income for the previous year is used in weighing financial need. The student's institution is also the disbursing agent for the Department; Pell Grants received from the Department are credited directly to the student's tuition account.

For five consecutive academic years, from 1996–1997 through 2000–2001, Defendants applied for Pell Grants on behalf of their son, who was a dependent for each of these years. Each of Defendants' five applications included false income information. Based on Defendants' misrepresentations, Defendants' son received both Pell Grants and Supplemental Educational Opportunity Grants which totaled $14,387.00. But for Defendants' false statements, their son would not have received the grants.

## II. Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for a judgment on the pleadings after the parties have filed a Complaint and an Answer. *See* Fed.R.Civ.P. 12(c); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Motions under Rule 12(c) are reviewed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *Northern Indiana*, 163 F.3d at 452. A Rule 12(c) motion will be granted only if it appears beyond doubt that the non-moving party cannot prove any facts that would support her claim. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th

Cir. 1987). The moving party must therefore demonstrate that there are no material issues of fact to be resolved. *Northern Indiana,* 163 F.3d at 452. Finally, the Court will view all facts in the light most favorable to the non-moving party. *Id.* (citation omitted).

## III. Discussion

### A. The False Claims Act

The FCA imposes liability on an individual who "knowingly presents, or causes to be presented, to an officer or employee of the United States government . . . a false or fraudulent claim for payment or approval. . . ." 31 U.S.C. § 3729(a)(1). Liability requires proof of three elements: "(1) the defendant made a record or statement in order to get the government to pay money; (2) the record or statement was false or fraudulent; and (3) the defendant knew it was false or fraudulent." *United States ex rel. Lamers v. City of Green Bay,* 168 F.3d 1013, 1018 (7th Cir. 1999). The "knowledge" element is satisfied if an individual: "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b). Innocent mistakes or mere negligence do not constitute conduct undertaken "knowingly" under the FCA. *Hindo v. University of Health Sciences/The Chicago Medical School,* 65 F.3d 608, 613 (7th Cir. 1995). "What constitutes the offense is not intent to deceive but knowing presentation of a claim that is either fraudulent or simply false. . . . In short, the claim must be a lie." *Id.* (citations omitted).

In 1986, Congress amended the FCA by, *inter alia,* increasing the liability imposed by the statute from double to treble damages (except for cooperation defendants, who remain liable for double damages), and raising the mandatory civil penalty from $2,000 per violation to a

3

discretionary amount between $5,000 and $10,000 per violation. 31 U.S.C. § 3729(a). These were the first and, to date, only amendments to the FCA's damages scheme since the Act's enactment in 1863.

A plain reading of the statute, the relevant case law and the legislative history confirms that the Court is not free to depart from these mandatory amounts. *See* 31 U.S.C. § 3729 (specifying that any person who engages in one of seven enumerated categories of conduct "*is* liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . ."(emphasis added)); *see also United States ex rel. Chandler v. Cook County, Illinois*, 277 F.3d 969, 978 (7th Cir. 2002) ("[T]he FCA affords the judge little discretion in imposing penalties on offenders. . . . Congress did make an exception to the general measure of damages when the person who has defrauded the Government cooperates before having learned of the investigation. In such a case, the court has discretion to impose double, rather than treble, damages.") (statutory citations omitted); *see also* S. Rep. No. 345, 99th Cong., 2d. Sess. 8 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5273 ("The Committee reaffirms the apparent belief of the act's initial drafters that defrauding the Government is serious enough to warrant an automatic forfeiture rather than leaving fine determinations with district courts, possibly resulting in discretionary nominal payments.")

### B. Defendants' Constitutional Arguments

The Government alleges that it incurred damages in the amount of $14,387.00, which, tripled under the FCA's treble damages provision, totals $43,161.00. In addition, the Government contends that given Defendants' admission that they presented a false claim for each

of the five academic years from 1996–1997 through 2000–2001, and since each claim constitutes a separate violation, the Court should assess a civil penalty between $25,000 and $50,000 (five claims multiplied by $5,000 to $10,000 per claim).

Defendants do not contest their liability; they have admitted in their Answer allegations which include all necessary elements under 31 U.S.C. § 3729(a)(1). Nor do Defendants argue that this Court has discretion to depart from the FCA's mandatory treble damages or "per claim" civil penalties; nor do Defendants challenge the Government's damages calculations under these compulsory provisions. Defendants do, however, argue that the FCA's damages provisions violate the Double Jeopardy Clause of the Fifth Amendment, the equal protection component of the Due Process Clause of the Fifth Amendment, and the Excessive Fines Clause of the Eighth Amendment. The Court addresses each argument in turn.

1. **Double Jeopardy**

First, Defendants assert that the FCA's damages provisions are punitive, and therefore criminal in nature, and thus subject to scrutiny under the Double Jeopardy Clause. The Clause provides: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. This Clause protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Defendants' argument falls out prior to the merits – even if the FCA's civil penalties are properly characterized as quasi-criminal, because Defendants have not been charged with any criminal violation, they lack the requisite standing to contest the FCA's damages provisions on the basis of double jeopardy.

2. **Equal Protection**

5

Second, Defendants argue that the FCA's damages provisions violate equal protection principles. Because Defendants have challenged a federal statute, the equal protection principles of the Fifth Amendment's Due Process Clause apply. *See Adarand Constrs., Inc. v. Pena*, 515 U.S. 200, 213 (1995). Federal legislation must meet the same equal protection standards applicable to the states set forth in the Fourteenth Amendment. *See Mathews v. de Castro*, 429 U.S. 181, 182 n.1 (1976).

At the heart of constitutional equal protection guarantees is the principle that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). The Supreme Court has developed a tripartite analysis when evaluating legislation that has been challenged on equal protection grounds: "we look, in essence, to three things: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." *Dunn v. Blumstein*, 405 U.S. 330, 335 (1972). Classifications implicating a suspect class, such as race, or burdening a fundamental right, are subject to a strict scrutiny analysis. *See City of Cleburne*, 473 U.S. at 440. Classifications which burden neither a fundamental right nor target a suspect class will be upheld as long as they bear a rational relationship to a legitimate governmental objective. *See Romer v. Evans*, 517 U.S. 620, 631 (1996).

Defendants' equal protection attack is premised on two arguments: (i) the FCA's damages provisions do not allow for mitigation due to negligence, good faith misunderstanding or mistake, and (ii) the provisions do not consider a defendant's ability to pay the damages. Defendants' first argument falls flat because the FCA does not even impose *liability*, let alone damages, on individuals whose conduct is merely negligent or the result of honest error. *Hindo*,

6

65 F.3d at 613.

As for Defendants' second argument, it is true that the FCA does not require an analysis of a defendant's ability to pay. The statute affords no discretion with respect to the awarding of treble damages, with the one express exception, inapplicable here, relating to cooperating defendants. 31 U.S.C. § 3729(a). With respect to the mandatory civil penalty, courts are given the limited leeway of awarding between $5,000 and $10,000 per violation. *Id.* Defendants' argument seems to be that the damages provisions of the FCA, by failing to consider a defendant's ability to pay, discriminate against people with less financial means, and thus constitute an equal protection violation.

Yet, Defendants do not allege, nor could they, that the FCA creates *any* classifications, suspect or otherwise. Even the deferential "rational basis" scrutiny that is applied to ordinary government classifications is not appropriate when the challenged law creates no classifications. *See McCoy v. Richards*, 771 F.2d 1108, 1112 (7th Cir. 1985) ("Their equal protection claim fails for two reasons. First, the Act contains no classification scheme. . . . Second, because the Act makes no such distinction, appellants cannot prove that they received disparate treatment under the Act."). Accordingly, because Defendants cannot demonstrate any statutory classification invoking its right to equal protection, its equal protection claim fails.

3. **Excessive Fines**

Third, construing their response charitably, Defendants appear to argue that imposition of treble damages and civil penalties in this case would violate the Eighth Amendment's Excessive Fines Clause. Although this Court is bound by Congress' mandated FCA damages regime, in cases in which the Eighth Amendment is applicable, the Court must

7

still independently assess whether any fine levied comports with the Amendment's requirements. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const., Amend. VIII. A fine is unconstitutionally excessive if: (1) the payment to the government constitutes punishment for an offense, and (2) the payment is grossly disproportionate to the gravity of the defendant's offense. *United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998). The first question to be answered is whether the FCA's civil damages scheme constitutes "punishment" for Eighth Amendment purposes.

The Seventh Circuit, in the wake of *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), has made clear that damages imposed under the FCA are, at least in part, punitive in nature. *See United States ex rel. Chandler*, 277 F.3d at 977 ("The Supreme Court in *Stevens* stated that, by increasing the damages from double to treble in 1986, the FCA was transformed from a remedial statute to a punitive one. . . . [D]amages under the FCA are now considered to be punitive . . ."); *see also United States ex rel. Dunleavy v. County of Delaware*, 279 F.3d 219, 223 (3d Cir. 2002) (holding that the FCA's treble damage provision is punitive); *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 244 F.3d 486, 491 (5th Cir. 2001) (same); *United States v. Mackby*, 261 F.3d 821, 831 (9th Cir. 2001) (holding that the FCA's treble damages provision and mandatory civil penalties rendered the Act punitive). Thus, because the FCA's damages provisions are deemed punitive, at least in part, they fall within the purview of the Eighth Amendment's limitations.

The Court's Excessive Fines analysis turns, then, on *Bajakajian*'s second prong – whether the damages sought to be imposed on Defendants are grossly disproportionate to the

gravity of their offense. "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Bajakajian*, 524 U.S. at 334. Although the Supreme Court has not provided a template for determining when a judgment may approach Constitutionally suspect territory (*c.f., Pacific Mutual Life Ins Co. v. Haslip*, 499 U.S. 1, 18 (1991) ("We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that general concerns of reasonableness . . . properly enter into the constitutional calculus.")), *Bajakajian* reminds this Court of its role in this area:

> [J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature. . . . Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes. . . . Whatever views may be entertained regarding severity of punishment . . . these are peculiarly questions of legislative policy.

524 U.S. at 336 (citations omitted).

In passing the 1986 FCA amendments which heightened the penalties for FCA violations, as the Seventh Circuit has noted, "[it] could not be more clear that Congress, in adopting this approach, addressed the situation with careful precision as to what sort of damage scheme was necessary to achieve the goals of the statute." *United States ex rel. Chandler*, 277 F.3d at 978. This Court's review of the amendments' legislative history yields three concerns emphasized by Congress, and worth repeating here: (i) the fraud targeted by the FCA was significant in monetary terms ("While it may be difficult to estimate the exact magnitude of fraud in Federal

9

programs and procurement . . . the problem is severe. . . . The Department of Justice has estimated fraud as draining 1 to 10 percent of the entire Federal budget. . . . The cost of fraud cannot always be measured in dollars and cents, however. . . . [F]raud erodes public confidence in the Government's ability to efficiently and effectively manage its programs." S. Rep. No. 99-345, at 3 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5266-68), (ii) the fraud was growing due to the then-inadequate deterrence provided by double damages and $2,000 penalties ("Evidence of fraud in Government programs and procurement is on a steady rise. . . . Fraud is perhaps so pervasive and, therefore, costly to the Government due to a lack of deterrence." *Id.* at 5273), and perhaps most apposite to this case, (iii) the fraud was endemic to large government contracts and small government programs alike ("Fraud permeates generally all Government programs ranging from welfare and food stamps benefits, to multibillion dollar defense procurements, to crop subsidies and disaster relief programs." *Id.* at 5267).

Mindful of the Supreme Court's directive that this Court grant *substantial* deference to Congress in legislating punishment, and, as well, of Congress' well-articulated basis for its damages scheme under the FCA, the Court turns to an assessment of the penalties in this case. It is undisputed that the government suffered actual loss in the amount of $14,387.00. Thus, tripling this actual loss, as the FCA requires the Court to do, yields a total of $43,161.00. With respect to the mandatory civil penalties, the Court finds that it must impose a separate fine for each of the false claims submitted. *See United States v. Bornstein*, 423 U.S. 303, 307 (1976) (each false claim constitutes a separate offense even if part of one fraudulent scheme). Here, it is uncontested that Defendants submitted five separate fraudulent income statements in support of their grant applications. The Court must impose a fine between $5,500 and $11,000 for each of

the five violations.[3] Thus, Defendants, under the statute, are jointly and severally liable to the Government in an amount between $70,661.00 and $98,161.00. *See Hughes*, 585 F.2d at 286 n. 2 (when two or more persons act in concert in violation of the False Claims Act, they are jointly and severally liable).

The Court, in its discretion, imposes on Defendants a total penalty of $70,661.00. Although a fine of $70,661.00 gives the Court pause, the fine is not grossly disproportionate to the gravity of Defendants' offense. First, it does bear an articulable correlation to the injury suffered by the Government. When the Court adjusts the fine to discount the remedial portion of the fine – *at least* $14,387.00[4] – the punitive portion of the fine is $56,274.00. This represents a penalty of less than four times the measurable actual loss to the government. This penalty is well within the bounds of proportionality and reasonableness, particularly when the FCA requires *no* actual loss as a prerequisite to the imposition of a fine. *See, e.g., United States ex rel. Joslin v. Community Home Health of Maryland, Inc.*, 984 F.Supp. 374, 383 (D.Md. 1997); *United States ex rel. Pogue v. American Healthcorp, Inc.*, 914 F.Supp. 1507, 1508-09 (E.D.Tenn. 1996).

Second, though sympathetic to the extreme financial strain that soaring

---

[3]The statutory penalties are adjusted for inflation under the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub.L. 101-410, § 5, 104 Stat. 891, note following 28 U.S.C. § 2461. The FCA's civil penalty currently is $5,500 to $11,000. 28 C.F.R. § 85.3(a)(9) (2003).

[4]The amount of $14,387.00 represents the readily measurable loss, but does not account for the other less quantifiable, but no less real, costs incurred by the government. *See, e.g., United States ex rel. Rosales v. San Francisco Housing Authority*, 173 F.Supp.2d 987, 1019 (N.D. Cal. 2001) ("The harm suffered by the government cannot be viewed narrowly as the monetary loss occasioned solely by a detected false claim. As *Genty* and *Bornstein* realized, the government must foot the bill for "the costs, delays and inconveniences occasioned by fraudulent claims.") (*citing Genty v. Resolution Trust*, 937 F.2d 899, 912 n.7 (3d Cir. 1991) (*citing Bornstein*, 423 U.S. at 314)).

post-secondary educational costs can place on families like Defendants, the Court cannot condone self-help remedies which include willfully defrauding the Government. The Court notes that its recognition of Defendants' circumstances is reflected in its imposition of mandatory civil penalties at the low end of the scale.

Finally, Defendants' conduct cannot be characterized as an isolated lapse in judgment. Although their scheme, by FCA standards, garnered a relatively nominal amount, Defendants knowingly submitted fraudulent information on no less than five occasions over the same number of years. Defendants' treble damages and statutory penalties, though hefty, are within the bounds of reasonableness and proportionality and therefore do not raise an issue of constitutional moment.

## IV. Conclusion

For the foregoing reasons, the Government's motion for judgment on the pleadings [10-1] is GRANTED. Judgment is hereby entered in favor of the Government, and against Defendants, jointly and severally, in the amount of $70,661.00. The Clerk is directed to enter a Rule 58 Judgment.

Date: June 10, 2003

Blanche M. Manning
United States District Court Judge